UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOB'S DAUGHTERS INTERNATIONAL, <br><br> Plaintiffs, <br><br> v. <br><br> HEIDI YOAST, <br><br> Defendant. | No. C16-1573RSL <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendant Heidi Yoast's "Motion for Summary Judgment." Dkt. # 41. Plaintiff, a sororal organization with connections to the Freemasons, filed this lawsuit alleging that defendant used its registered and unregistered marks for commercial and advertising purposes without consent. Plaintiff asserts claims of federal trademark infringement, false designation of affiliation/sponsorship, and unfair competition as well as related state law claims. Defendant seeks summary judgment on all of plaintiff's claims and an award of attorney's fees under § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record"

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**A. Defendant's Use of the Mark**

Defendant argues that she has not, as a matter of law, infringed plaintiff's trademarks because she used the marks as a functional aesthetic component of the goods sold, citing Int'l Order of Job's Daughters v. Lindeburg and Co., 633 F.2d 912 (9th Cir. 1980). In Lindeburg, the Ninth Circuit found that the unauthorized use of plaintiff's marks on jewelry sold by Lindeburg was not infringement because the insignia was an important ingredient in the commercial

---

[1] This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

The Court has not considered plaintiff's unauthorized statement of undisputed facts (Dkt. # 41-1). The parties' objections to "overlength" memoranda are overruled.

Plaintiff's broad objections to entire declarations, rather than to specific statements, are overruled. Defendant's evidentiary objections are overruled.

success of the products: the purchasers wanted the jewelry because it bore the organization's marks and allowed them to show allegiance and/or membership. The mark was, therefore, a large part of the benefit the consumer desired when making the purchase.

Defendant correctly points out that her use of plaintiff's marks is very similar to that which was deemed lawful in Lindeburg. She fails to acknowledge, however, that even if a phrase or design mark serves a functional purpose when incorporated in a product, it may still infringe if the evidence also shows that there is a likelihood that consumers would be confused as to who produced or endorsed the goods. Lindeburg discussed this very possibility:

> [E]ven if the Job's Daughters' name and emblem, when inscribed on [Yoast's sweatshirts], served primarily a functional purpose, it is possible that they could serve secondarily as trademarks if the typical customer not only purchased the [sweatshirt] for its intrinsic functional use and aesthetic appeal but also inferred from the insignia that the [sweatshirt] was produced, sponsored, or endorsed by Job's Daughters. . . . We recognize that there is some danger that the consumer may be more likely to infer endorsement or sponsorship when the consumer is a member of the group whose collective mark or trademark is being marketed. Accordingly, a court must closely examine the articles themselves, the defendant's merchandising practices, and any evidence that consumers have actually inferred a connection between the defendant's product and the trademark owner.

633 F.2d at 919. The Ninth Circuit reviewed the "comprehensive findings of fact" that the district court made after "an extensive trial" and concluded that Lindeburg had not used the Job's Daughters marks to indicate sponsorship or endorsement and that Job's Daughters had failed to meet its burden of showing consumer confusion as to origin. Id. at 914-15, 919-20. Defendant cannot short-circuit the fact-intensive inquiry regarding consumer confusion that lies at the heart of trademark protection (discussed below) by relying on the conclusions of law the Lindeburg court reached on different facts.

## B. Likelihood of Confusion

Section 1114(1)(a) of the Lanham Act makes any person who, without the consent of the trademark registrant, "use[s] in commerce any reproduction . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" liable for damages to the registrant. Defendant argues that her use of plaintiff's marks was purely functional and that there is no evidence of actual confusion regarding plaintiff's affiliation with defendant's products or evidence showing that confusion is likely. "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998) (quotation marks in original). The Ninth Circuit has identified eight factors to guide the analysis: (1) strength of the mark, (2) relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of consumer care in purchasing decision, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016) (citing to AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)). Actual confusion is merely one of the factors to be considered, and the factors are not to be mechanically applied or rigidly tallied up. Where at least some of the factors support the non-moving party and a reasonable jury could give great weight to those factors, summary judgment is not appropriate. Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1210 (9th Cir. 2012).

In this case, plaintiff licenses its marks to other manufacturers for the production of the same type of goods defendant makes, and defendant's marketing strategies do not make clear that she is not a licensed vendor. The strength of the marks, the relatedness of the goods, the similarity of the marks, and the identity of marketing channels all support plaintiff's claim that

there is a likelihood of confusion in the marketplace. As the Ninth Circuit noted in <u>Lindeburg</u>, there is also a danger that members of plaintiff's organization, knowing that plaintiff has rules regarding the use of its marks, might infer endorsement or sponsorship when they see the marks on defendant's advertised goods. A reasonable jury could conclude that defendant's manufacture and sale of products bearing plaintiff's marks is "likely to cause confusion, or to cause mistake, or to deceive" customers regarding who produced, sponsored, or endorsed the products.

**C. Consent**

Defendant argues that, even if her use of plaintiff's marks were infringing, plaintiff consented to the use because its members requested that the infringing products be made. Defendant offers no case law or other authority in support of her implied assertion that a member of an organization is the organization itself. To the extent defendant argues that plaintiff's by-laws give its members the power to consent to infringing uses of plaintiff's mark, the pre-2016 version of the by-laws cannot be read in any manner that would support this argument. Pursuant to the instructions regarding trademark use that was sent to defendant in 2014, members of plaintiff's organization (such as defendant and her customers) are to use a specified form to apply for permission to use the mark, which can be granted only by "a member of the Board so designated as Chairman of Trademark." Dkt. # 64 at 6. Defendant has not produced evidence showing that all, or even most, of the orders she filled between 2010 and 2016 were for members who had applied for or obtained permission to use the mark. Nor is there any indication that defendant herself acquired the necessary permission.

With regards to the 2016 version of the by-laws, there are two seemingly inconsistent provisions which may or may not authorize certain members of plaintiff's organization to contract with a vendor to produce items using plaintiff's unregistered marks without permission.[2]

---

[2] The current by-laws forbid any outside group or vendor from using the unregistered marks absent specific permission from specific Job's Daughters officials, while also allowing certain members

Regardless, members do not have a right to use plaintiff's registered marks without permission. If a member wants to purchase items displaying a registered mark, she either has to purchase them from plaintiff's official vendor, Doc Morgan Inc., or has to submit an application, obtain permission, and pay a "trademark usage fee" before contracting with a vendor to produce the items. Dkt. # 64 at 10. In addition, the by-laws expressly forbid selling items using a registered or unregistered trademark on-line absent express permission. There is ample evidence in the record from which a reasonable jury could conclude that plaintiff did not consent to the vast majority of infringing products at issue in this litigation.[3]

**D. False Designation of Origin and State Law Causes of Action**

"Whether the theory is Section 43(a) of the Lanham Act or state unfair competition law, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." Corp. or Gonzaga Univ. v. Pendleton Enters., LLC, 55 F. Supp.3d 1319, 1325 (E.D. Wash. 2014). As discussed above, there is a triable issue of fact regarding whether defendant's production and sale of items bearing plaintiff's marks falsely represented the origin, sponsorship, and/or affiliation of the products. Defendant is not entitled to summary judgment on these claims.

**E. Laches**

Defendant offers no evidence that plaintiff was aware that she was using plaintiff's marks as early as 2009. This argument appears to rely on the theory that if one of plaintiff's members were aware of defendant's activities, that knowledge is imputed to plaintiff. No case law or other authority is cited in support of such an expansive interpretation of organization knowledge.

---

to contract with a vendor to produce items displaying the unregistered marks. Dkt. # 64 at 11.

[3] Plaintiff's claims were not, therefore, mooted as a result of the 2016 changes to the by-laws.

**F. Unclean Hands and Abandonment**

Defendant accuses plaintiff of both heavy handed tactics in the protection and enforcement of its marks and of abandoning the marks. Neither accusation is grounded in the facts of this case. Defendant has not established these defenses as a matter of law.

**G. Attorney's Fees**

Defendant has not prevailed. Her request for attorney's fees is therefore denied.

For all of the foregoing reasons, defendant's motion for summary judgment is DENIED.

Dated this 29th day of May, 2018.

Robert S. Lasnik
United States District Judge